In the Interest of E.L.T.

No. 14–01–00998–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 12, 2002.

Donald M. Crane, Katy, for appellants.

Michael Stafford, Oliver W. Sprott Jr., Sandra D. Hachem, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## MAJORITY OPINION

CHARLES W. SEYMORE, Justice.

In a single issue, appellant Sheila Joyce Deavers appeals the termination of her parent-child relationship with her son, E.L.T. We affirm.

### BACKGROUND

Appellant is the mother of E.L.T., born August 19, 2000. After the Texas Department of Protective and Regulatory Services (TDPRS) filed suit, the trial court placed E.L.T. in protective custody for the following reasons: (1) mother's inability to provide the child with food, shelter, clothing, and proper medical attention; (2) mother's mental condition; (3) mother's recent hospitalization; and (4) other siblings placed in care of TDPRS.

Appellant does not complain about the evidence presented at trial supporting termination of her parental rights. Instead, she appeals the denial of her oral motion for continuance and request for a competency evaluation. When trial began on August 15, 2001, appellant's trial counsel requested a competency evaluation and continuance because appellant repeatedly asked, "What are we doing here?" Trial counsel argued that appellant could not understand the nature of the proceeding; therefore, she was unable to assist counsel, rendering his representation ineffective. The court denied the motion for continu-

ance and competency evaluation. The trial was reset until September 5, 2001. On that date, appellant's attorney again orally asserted the motions for continuance and competency evaluation. The motions were denied. At the conclusion of trial, the court terminated appellant's parental rights.

### ISSUE PRESENTED

Appellant raises a single issue.[1] In her brief, she appears to raise the following sub-issues: (1) whether it was an abuse of discretion to deny her motion for continuance; (2) whether it was an abuse of discretion to deny her motion for a competency evaluation; (3) whether it was error to proceed with the trial if appellant was incompetent; and (4) whether appellant received ineffective assistance of counsel because of her inability to assist her attorney at trial.

### MOTION FOR CONTINUANCE

First, appellant contends the trial court erred in denying her motion for continuance. The decision to grant or deny a motion for continuance is within the trial court's sound discretion. *See* Tex.R. Civ. P. 251. The trial court's action in denying a continuance will not be disturbed unless the record discloses a clear abuse of discretion. *State v. Wood Oil Distrib. Inc.,* 751 S.W.2d 863, 865 (Tex. 1988). This Court cannot substitute its judgment for the trial court's, but must only determine whether the trial court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Philipp Bros. Inc., v. Oil Country Specialists, Ltd.,* 709 S.W.2d 262, 265 (Tex.App.-Houston

1. "The trial court abused its discretion by failing to grant respondent Sheila Joyce Deavers's motion for competency evaluation and continuance on September 5, 2001[,] because Sheila Joyce Deavers suffers from a mental illness which prevents her from effectively communicating with her court-appointed counsel and renders her unfit to proceed with proceedings."

[1st Dist.] 1986, writ dism'd). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666 (Tex.1996).

■ A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or by operation of law. TEX.R. CIV. P. 251. If a motion for continuance is not made in writing and verified, it will be presumed that the trial court did not abuse its discretion in denying the motion. *Ohlhausen v. Thompson,* 704 S.W.2d 434, 436 (Tex.App.-Houston [14th Dist.] 1986, no writ). In this case, the record does not contain a written motion or affidavit. Because appellant did not comply with Rule 251, the trial court did not abuse its discretion in denying the motion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). Thus, we overrule appellant's first sub-issue.

### COMPETENCY

■■ In her second sub-issue, appellant argues that the trial court was not authorized to proceed to trial without determining whether she was competent because the proceeding was quasi-criminal. From her brief, we distill two basic contentions: (1) the trial court erred in overruling her oral motion for a competency evaluation;[2] and (2) the trial should have been continued because of appellant's alleged incompetence. Appellant has failed to cite

any authority in support of her first contention. An issue not supported by authority is waived. *Casteel–Diebolt v. Diebolt,* 912 S.W.2d 302, 304–05 (Tex.App.-Houston [14th Dist.] 1995, no writ). Accordingly, appellant has waived any error regarding the denial of her oral motion for a competency evaluation.

Appellant further argues that a termination proceeding is quasi-criminal, and the trial should have been continued because she was mentally incompetent.[3] This argument is flawed and unsupported by authority. First, appellant's argument necessarily includes an assumption that she is incompetent. Conversely, a person is presumed to be mentally competent unless there is a judicial finding to the contrary. *See* TEX. HEALTH & SAFETY CODE ANN. § 576.002(b) (Vernon Supp.2002). The record does not reflect that she made any request (written or oral) for the court to find her incompetent. Second, appellant fails to cite any authority in which a family court proceeding may be halted because of a parent's incompetency. *See Casteel–Diebolt,* 912 S.W.2d at 304–05.

The relevant sections of the Texas Family Code do not prescribe a competency standard that a parent must meet before participating in a hearing or trial. *See generally* TEX. FAM.CODE ANN. §§ 161.001–161.210 (Vernon 1996 & Supp.2002). To the contrary, a parent's mental illness may serve as a basis for involuntary termination of parental rights. *See id.* § 161.003; *Spurlock v. Tex. Dept. of Pro-*

---

2. The trial testimony reveals that appellant had been offered psychological services and that the trial court previously ordered a mental evaluation. Appellant attended neither.

3. Appellant cites the American Bar Association's standard for criminal competency to stand trial:

> The test for determining mental competence to stand trial should be whether the

defendant has sufficient present ability to consult with defendant's lawyer with a reasonable degree of rational understanding and otherwise to assist in the defense, and whether the defendant has a rational as well as factual understanding of the proceeding.

ABA Criminal Justice Mental Health Standards § 7–4.1s(b) (1989).

*tective & Regulatory Servs.*, 904 S.W.2d 152 (Tex.App.-Austin 1995, writ denied) (mother's mental illness provided basis for termination of parental rights). Further, a mentally ill person may sue and be sued under Texas law. *See* TEX. HEALTH & SAFETY CODE ANN. § 576.001(b) (Vernon 1992). Additionally, an attorney must seek appointment of a guardian or other legal representative for, or seek other protective orders with respect to, a client whom the attorney reasonably believes is lacking legal competence. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.2002) (TEX. STATE BAR R. art. X, § 9). There was no guardian or legal representative sought for appellant in this case. Lastly, Rule 44 of the Texas Rules of Civil Procedure states that "lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by 'next friend'" under certain rules. There was no "next friend" appearing for appellant.

In total, the record does not reflect an abuse of discretion in proceeding with trial.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, appellant argues that her alleged incompetence and inability to communicate with counsel prevented him from providing effective representation. Appellant contends a respondent in a termination proceeding is guaranteed effective assistance of counsel because the proceeding is quasi-criminal. Texas courts are split whether a person is constitutionally guaranteed effective assistance of counsel in proceedings for termination of parental rights. *Compare In re A.V.*, 57 S.W.3d 51, 57 (Tex. App.-Waco 2001, no pet. h.) (stating counsel in termination proceeding is required to be effective); *In re J.M.S.*, 43 S.W.3d 60, 63 (Tex.App.-Houston [1st Dist.] 2001,

no pet.) (holding the statutory right to counsel in a termination proceeding means the right to effective assistance of counsel) *with In re A.R.R.*, 61 S.W.3d 691 (Tex. App.-Fort Worth 2001, pet. denied) (declining to extend the Sixth Amendment right to effective assistance of counsel to a civil proceeding); *Arteaga v. Tex. Dep't of Protective & Regulatory Servs.*, 924 S.W.2d 756, 762 (Tex.App.-Austin 1996, writ denied) (holding parents in a termination case are not entitled to the constitutionally guaranteed effective assistance of counsel afforded to criminal defendants).

■ This court has not yet ruled on the existence of such a right. However, even if such a right exists, scrutiny of counsel's performance is highly deferential, and there is a strong presumption that the attorney's actions could have been the result of sound trial strategy. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986) (en banc). In Texas, this presumption ordinarily cannot be overcome absent evidence in the record explaining counsel's actions. *Busby v. State*, 990 S.W.2d 263, 268–69 (Tex.Crim.App. 1999). Additionally, appellant must meet a burden of proof that her counsel was ineffective. She must prove (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *In re J.M.S.*, 43 S.W.3d at 63–64.

■ In this case, nothing in the record supports the assertion that appellant's trial counsel performed deficiently because of appellant's alleged incompetence. Nothing in the record supports the conclusion that the result of the proceeding would have been different but for counsel's actions.

Additionally, appellant has not cited any authority that counsel's assistance is made ineffective through a client's inability to assist during trial. The *Strickland* test focuses on the conduct of the attorney. We overrule the final sub-issue.

Accordingly, we affirm the judgment of the trial court.

GUZMAN, J. concurring.

EVA M. GUZMAN, Justice, concurring.

Although I concur in the result the majority reaches, I write separately regarding the failure of Texas law to adequately address parental competency in the context of termination of parental rights. As the majority correctly states, no existing statute or rule requires a trial court in a termination proceeding to hold a hearing to determine a parent's competency. Thus, under certain limited circumstances, there can be no guarantee that a party is effectively able to provide counsel with necessary or relevant data to prevent a wrongful deprivation of parental rights.

Two years ago, the United States Supreme Court reaffirmed the liberty interest of parents to direct the upbringing of their children as "perhaps the oldest of the fundamental liberties" recognized by the Court. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). After briefly surveying "extensive precedent," the Court firmly pronounced that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66, 120 S.Ct. 2054. Accordingly, the Fourteenth Amendment governs a state's attempt to terminate the relationship between parent and child. *Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Echoing these sentiments, the Texas Supreme

Court has recognized that the involuntary termination of parental rights implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985); *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980).

No Texas case specifically addresses a due process right to a parental competency hearing prior to a proceeding to terminate parental rights. For this reason, I disagree with the majority's summary dismissal of appellant's points for failure to cite authority supporting her position. Appellant's argument that termination proceedings are quasi-criminal in nature, thereby implicating additional due process concerns, underscores the importance of procedures to evaluate parental competency. Notwithstanding the traditional classification of termination proceedings as civil in nature, some courts have recognized that in certain contexts such suits are quasi-criminal. *In re B.L.D.*, 56 S.W.3d 203, 211–12 (Tex.App.-Waco 2001, pet. filed) (noting that statutory right to counsel in termination proceedings includes a due process right that counsel be effective); *In re J.M.S.*, 43 S.W.3d 60, 63 n. 1 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (arguing by analogy in termination case that certain other family law proceedings are quasi-criminal in nature); *In the Matter of the Marriage of Hill*, 893 S.W.2d 753, 755–56 (Tex.App.-Amarillo 1995, writ denied) (likening the procedural issues in parental termination cases to those of criminal cases as both implicate constitutional concerns); *see also Edwards v. Texas Dep't of Protective and Regulatory Servs.*, 946 S.W.2d 130, 135 (Tex.App.-El Paso 1997, no writ) (quoting approvingly of *Hill*); *but see In re R.V.*, 977 S.W.2d 777, 781 (Tex.App.-Fort Worth 1998, no pet.) ("A suit to terminate parental rights is a civil proceeding."); *Malone v. State*, 864 S.W.2d 156, 159 (Tex.App.-Fort Worth 1993, no pet.) (noting that "the termination of pa-

rental rights is a civil proceeding with a remedial result" and thus not triggering double jeopardy concerns).

Set apart from "mine run civil actions," termination proceedings work a "unique kind of deprivation." *M.L.B. v. S.L.J.*, 519 U.S. 102, 127–28, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); *Santosky*, 455 U.S. at 762, 102 S.Ct. 1388 (noting that the challenged state-initiated neglect proceeding bore "many indicia of a criminal trial"). Indeed, the removal of a child from the care of his parents is "a penalty as great, if not greater, than a criminal penalty." *Lassiter v. Dep't of Soc. Servs. of Durham County*, 452 U.S. 18, 39 n. 5, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (Blackmun, J., dissenting) (citations omitted). Texas commentators have gone so far as to call termination "the capital punishment of civil law." SAMPSON & TINDALL, TEXAS FAMILY CODE ANNOTATED § 161, Introductory Comment p. 757 (2001). Such a characterization rings true considering that termination proceedings involve "the awesome authority of the State to destroy permanently all legal recognition of the parental relationship." *M.L.B.*, 519 U.S. at 128, 117 S.Ct. 555.

In criminal cases, "the due process right to a fair trial prevents the government from subjecting a person to trial whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Alcott v. State*, 51 S.W.3d 596, 598 (Tex.Crim.App.2001). The same due process protection should be provided to a parent facing the involuntary deprivation of the fundamental right to direct a child's upbringing.

At least one other state has addressed the issue of competency hearings in termination proceedings from a due process perspective. *See In re Alexander V.*, 223 Conn. 557, 613 A.2d 780 (1992). In *Alexander*, the Connecticut Supreme Court considered whether the Fourteenth Amendment requires an inquiry of parental competency before a termination proceeding. *Id.* The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law. U.S. CONST. amend XIV, § 1; *Troxel*, 530 U.S. at 65, 120 S.Ct. 2054 (quotations and citations omitted). When dealing with procedural due process rights, it is important to remember that the focus is not on *whether* the government may act at all to deprive the party of the interest but what process is due before the government attempts the deprivation in question. Weighing the process due, the *Alexander* court invoked the balancing test of *Mathews v. Eldridge*. 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Mathews* directs courts to balance three factors in determining what procedural safeguards are required by the federal due process clause: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or alternative procedural safeguards; and (3) the government's interests, including the function involved and the fiscal and administrative costs that the additional or substitute procedural requirements would entail. *Id.* at 335, 96 S.Ct. 893. Any procedural due process inquiry remains "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Under the first prong of the balancing test, a court is to consider the nature of the private interest affected by the official action. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. Parents hold a "fundamental liberty interest" in the care as well as the custody

and management of their children. *Troxel*, 530 U.S. at 65, 120 S.Ct. 2054; *Santosky*, 455 U.S. at 753, 102 S.Ct. 1388; *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). The Texas Supreme Court has recognized the natural parental right as "essential," "a basic civil right of man," and "far more precious than property rights." *Holick*, 685 S.W.2d at 20 (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1976); *In re B.L.D.*, 56 S.W.3d at 210). Both the required standard of review and the high burden of proof suggest the enormity of the liberty interest at stake in termination proceedings. Because a termination decree is complete, final, and irrevocably divests that natural parental right, courts have reviewed such termination proceedings under strict scrutiny. *See Troxel*, 530 U.S. at 80, 120 S.Ct. 2054 (Thomas, J., concurring) (noting that strict scrutiny is the appropriate standard for reviewing the infringement of fundamental rights such as parental right to direct child's upbringing); *Holick*, 685 S.W.2d at 20–21 ("[T]ermination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent."). Considering the magnitude of the interest threatened in such proceedings, courts have also required clear and convincing evidence in support of termination before rendering a judgment that involuntarily terminates parental rights. *Santosky*, 455 U.S. at 769, 102 S.Ct. 1388 ("We hold that [the clear and convincing evidence] standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process."); *Sims v. State Dep't of Pub. Welfare*, 438 F.Supp. 1179, 1194 (S.D.Tex. 1977), *rev'd on other grounds sub nom. Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) ("[T]he fundamental right to family integrity requires at the very least that the State notify the parents of the allegations and prove its case by clear and convincing evidence.") So too have Texas state courts required clear and convincing evidence when the State seeks to sever the parent-child relationship. *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex.1984) ("The evidence in support of the findings must be clear and convincing before a court may render judgment for involuntary termination.")

The State must remain ever vigilant in ensuring procedural fairness in this context, as American culture is based upon a "strong tradition of parental concern for the nurture and upbringing of their children." *Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15, (1972); *see also Parham v. J. R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children.") Considering the foregoing, the liberty interest in the parent-child relationship must be recognized as considerable under the first prong of the *Mathews* balancing test.

Under the second prong of the balancing test, a court is to consider not only the risk of an erroneous deprivation of parental rights, but also the potential minimization of that risk with the implementation of additional or alternative procedural safeguards. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. As a preliminary matter, it is important to note that even though there is no provision for a competency hearing, Texas law provides for the appointment of an attorney ad litem for a parent who is the subject of a termination proceeding if the parent suffers from a mental or emotional illness, or mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child. Tex. Fam.Code Ann.

§ 161.003(b). The *Alexander V.* court defined a mentally incompetent person as "one who is unable to understand the nature of the termination proceeding and unable to assist in the presentation of his or her case." 613 A.2d at 784. Noting the severe disadvantages mentally incompetent parents face, the court reasoned that without the assistance of a competent parent, a guardian ad litem might be without sufficient information to rebut evidence offered by the state, which, although superficially damaging, could be refuted by a competent parent or a witness whose availability would be made known by a competent parent. *Id.* The court also recognized that the ability of the guardian ad litem and mentally incompetent parent to offer affirmative proof of the existence or prospect of an ongoing parent-child relationship might be significantly compromised. *Id.* Moreover, a mentally incompetent parent might be unable to assist his or her attorney or guardian in establishing tactical and substantive goals at the termination proceeding. *Id.*

Texas case law has defined an incompetent person as one "whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Alcott,* 51 S.W.3d at 598. If this definition is extended and applied in the termination context, there is a cognizable risk that a parent unable to assist her attorney or to understand the proceedings might suffer an erroneous termination of parental rights, regardless of whether an ad litem has been appointed.

A competency hearing would provide the trial court with an opportunity to gain a better understanding of the parent's capabilities as well as to explore alternative remedies. It would also afford the parties an opportunity to present the trial court with additional evidence concerning the parent's mental state, the ability of the parent to assist counsel, and whether the incompetency is temporary or poses a continuing threat to the parent or the child. Under the second prong of the balancing test, therefore, the availability of a competency hearing in a termination proceeding would not only significantly improve upon the present statutory procedure, which provides only for the appointment of an ad litem, but also would reduce the risk that a parent's rights might be erroneously terminated.

The third prong of the balancing test focuses on the government's dual interests—an administrative interest in reducing costs associated with termination proceedings and an interest in ensuring an expeditious yet accurate resolution to protect the child's welfare. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893. The psychological effects of prolonged termination proceedings on a child are of such a nature and magnitude that time is indeed of the essence. A timely proceeding would better serve the welfare of the child by ensuring permanency and stability. Delay would not only hinder the State's interest in promoting the children's welfare, but also would increase the costs with each additional hearing. As a result, the government's dual interests may be burdened by a delay in holding a competency hearing. Consideration of the three *Mathews v. Eldridge* factors suggests that, under certain circumstances, due process requires that a hearing be held to determine the legal competency of a parent in a termination proceeding. *Alexander V.,* 613 A.2d at 785.

The majority correctly concludes that the trial court did not abuse its discretion in refusing to conduct a competency hearing. The trial record reveals that the issue of appellant's competency was raised only on two occasions: the first on August

15, 2001, when appellant's trial counsel requested a competency evaluation and continuance based on the following: (1) appellant's inability to assist counsel, largely based on her repeated questions of, "What are we doing here?" and (2) appellant's denial of her apparent pregnancy. The second on September 5, 2001, during trial, at which time appellant's counsel orally asserted a motion for continuance and competency evaluation. Other than conclusory remarks by appellant's attorney, there is no evidence to support appellant's alleged incompetence. In addition, the trial court could have been concerned that the request for a competency evaluation at such a late stage in the termination proceeding was a tactical maneuver to delay the proceeding, and thereby force dismissal of the suit by operation of law, pursuant to section 263.401 of the Texas Family Code.[4] Accordingly, the trial court was not presented with sufficient evidence to raise a bona fide doubt as to appellant's competency.

4. "On the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child." TEX. FAM. CODE ANN. § 263.401.