COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-08-164-CV

 

 

IN THE INTEREST OF S.W. 

AND S.W., CHILDREN

 

 

 

                                                  ------------

 

             FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

Introduction








Appellant S.B. appeals the
trial court=s order terminating
her parental rights to her children, S.W. and S.W.[2]  In two issues, appellant contends that the
trial court abused its discretion by denying her motion for continuance, and
that the evidence presented at trial was factually insufficient to prove that
termination of the parent-child relationship was in her childrens= best interests.  We affirm.

                                           Background
Facts

On April 27, 2007, appellant
gave birth to twin daughters (the twins). 
The twins were born prematurely, weighing approximately four pounds each
when delivered, and both had heart murmurs which required them to be closely
monitored during an extensive hospital stay. 
On May 29, 2007, upon their release from the hospital, the Texas
Department of Family and Protective Services (the Department) removed the twins
from appellant=s custody
and placed them with foster parents.  The
next day, the Department filed a petition to gain conservatorship of the twins
and to terminate the twins= relationship with appellant. 
The trial court granted the Department temporary conservatorship and
scheduled an adversary hearing under the Texas Family Code.  See Tex. Fam. Code Ann. ' 262.201 (Vernon Supp. 2008). 
Appellant received a copy of a AFamily Service Plan@ (service plan) from a Department caseworker in June 2007, which
required her to participate in drug assessments, parenting classes,
psychological evaluations, and counseling sessions, among other tasks.  The trial court ordered that appellant comply
with the service plan in July 2007. 
However, at the time of trial in April 2008, appellant had not completed
any of the required services.








Appellant visited the twins
twice in June 2007, and then left alone for Atlanta, Georgia in July 2007.  Appellant returned to Texas around
Thanksgiving of that year and visited the twins twice more before traveling
back to Atlanta.  Finally, appellant
returned again to Texas and had two visits with the twins in March and April
2008.  In total, from their removal from
her custody in May 2007 until the termination trial in April 2008 (a period
spanning almost eleven months), appellant saw the twins six times, for an hour
on each occasion.  During the visits, the
twins often became agitated and began crying when separated from their foster
mother.

On April 10, 2008, based in
part on information received from appellant, the Department amended its
petition for termination to name a new father of the twins.  On April 15, 2008 (the trial date), the
Department filed a motion to sever the alleged father from appellant=s case, so that appellant=s case could proceed to trial. 
That day, appellant moved for a continuance to allow her more time to
complete her service plan, and she argued against the Department=s severance motion.  The trial
court granted the severance, denied the continuance, and heard testimony from
appellant and two Department employees on the termination petition.








The evidence established that
appellant has given birth to a total of seven children, including most recently
the twins.  Appellant does not have
custody of any of her previous five children, and her parental rights have been
terminated with respect to three of these children.  During her pregnancy with the twins,
appellant smoked marijuana, and she tested positive for marijuana at their
birth.  Appellant also testified that she
smoked marijuana each of the two days preceding her termination trial, that she
has had problems with drugs for eight years, and that she has never entered any
drug rehabilitation program.  Upon giving
birth to her fifth child, appellant tested positive for marijuana and cocaine.

The evidence further
indicated that appellant was unemployed but was looking for a job at fast food
restaurants and grocery stores and was receiving $308 per month in social
security insurance payments.  Appellant
said that upon finding employment, a sister (who has a theft conviction) had
agreed that she would watch the twins while appellant worked.  Testimony demonstrated that the twins had no
place to permanently reside, had no options for placement with relatives, and
had no medical insurance (though appellant testified that she would apply for
benefits from Medicaid or the Children=s Health Insurance Program). 
Also, appellant had no cribs or other supplies for the twins and had no
stable transportation.








After the evidence was closed
and counsel argued, the trial court terminated appellant=s parental relationship with the twins.  Specifically, the trial court found that
appellant (1) knowingly placed or knowingly allowed the twins to remain in
conditions or surroundings which endangered their physical or emotional
well-being, (2) engaged in conduct or knowingly placed the twins with persons
who engaged in conduct which endangered their physical or emotional well-being,
and (3) had previously had her parent-child relationship terminated with
respect to another child based on an adverse finding regarding these previous
two standards.  See Tex. Fam. Code
Ann. ' 161.001(1)(D), (E), (M) (Vernon Supp. 2008).  The court also found that termination of
appellant=s parental
relationship with the twins was in their best interests.  Id. ' 161.001(2).  Appellant
timely filed this appeal.

                              Denial of the Motion for Continuance








In her first issue, appellant
contends that the trial court erred in denying her motion for continuance.  We review a trial court=s ruling granting or denying a motion for continuance for an abuse of
discretion.  See BMC Software Belg.,
N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002).  We do not substitute our discretion for that
of the trial court.  In re Nitla S.A.
de C.V., 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding).  Instead, we must determine whether the trial
court=s action was so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law.  Marchand,
83 S.W.3d at 800.  The focus is on
whether the trial court acted without reference to guiding rules or
principles.  Goode v. Shoukfeh,
943 S.W.2d 441, 446 (Tex. 1997).  A
motion for continuance shall not be granted except for sufficient cause
supported by an affidavit, consent of the parties, or by operation of law. Tex.
R. Civ. P. 251; see also In re E.L.T., 93 S.W.3d 372, 374 (Tex. App.CHouston [14th Dist.] 2002, no pet.) (noting that Ato grant or deny a motion for continuance is within the trial court=s sound discretion@).

Appellant contends that a
continuance should have been granted because she needed more time to complete
her service plan and the twins= father=s
termination case was still pending; therefore, a delay in the proceedings would
not have harmed the twins by delaying their permanent placement.








We have held that when a
parent, through his or her own choices, fails to comply with a service plan and
then at the time of the termination trial requests a continuance in order to
complete the plan, the trial court does not abuse its discretion by denying the
continuance.  See In re L.D.K., No.
02‑07‑00288‑CV, 2008 WL 2930570, at *2B3 (Tex. App.CFort Worth
July 31, 2008, no pet.) (mem. op.); see generally E.L.T., 93 S.W.3d at
374 (explaining that to be reversible, a denial of a continuance must be Aso arbitrary as to exceed the bounds of reasonable discretion@).  The record demonstrates that
appellant received her service plan in June 2007, that the Department filed the
service plan in July 2007, and that the trial court ordered appellant to comply
with the service plan=s provisions
later that same month.  However, at the
time of trial in April 2008, appellant had not completed any of the
service plan=s
requirements.

Instead, appellant spent much
of the time between June 2007 and April 2008 in Georgia for a temporary visit
to Aget away from trouble@ and give her Apeace of
mind.@  Though acknowledging that she
understood the service plan, appellant testified that she chose to travel to
Georgia voluntarily and to neglect her service plan during her trip.  In the time appellant was away, three
documents were filed which indicated appellant was noncompliant with her
service plan.  Appellant similarly failed
to complete her service plans during prior cases involving her other children.

Under these facts, we cannot
conclude that the trial court abused its discretion by denying appellant=s continuance for more time to complete her service plan.








Likewise, we are unpersuaded
that a continuance should have been granted because the twins= father=s case
remained unresolved.  The record
indicates that the Department was proceeding with exploring permanent options
for the twins.  For instance, a
Department caseworker testified that within a couple weeks of appellant=s termination trial, she planned on beginning to study the placement
options related to four families who had already submitted adoption
applications.  Once a prospective
adoptive family was chosen, the Department planned to begin scheduling
interaction between that family and the twins. 
Further, appellant testified that the twins= father planned on continuing to reside in Georgia (making it unlikely
that he would contest the termination proceedings against him).

Finally, we note that even if
appellant had been granted more time to complete her service plan, she cannot
demonstrate that the result of these proceedings would have changed because
appellant=s
relationship with the twins was not terminated for failing to complete
her service plan, but was instead terminated for other statutory reasons.  For this reason as well, the trial court did
not abuse its discretion by denying her motion for continuance.[3]  See In re H.B., No. 02‑06‑00102‑CV,
2006 WL 3438193, at *2 n.6 (Tex. App.CFort Worth Nov. 30, 2006, no pet.) (op. on reh=g) (mem. op.).

Therefore, we hold that the
trial court did not abuse its discretion by denying appellant=s motion for continuance. 
Accordingly, we overrule appellant=s first issue.








                                         Factual Insufficiency

In her second issue,
appellant contends that the evidence was factually insufficient to show that
termination of her parental relationship with the twins was in their best
interests.

Standard of Review

In reviewing the evidence for
factual sufficiency in a termination case, we must give due deference to the
fact‑finder=s findings
and not supplant the judgment with our own. 
In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the entire
record, a fact‑finder could reasonably form a firm conviction or belief
that termination of appellant=s parental rights was in the best interest of the twins.  In re C.H., 89 S.W.3d 17, 28 (Tex.
2002).  If, in light of the entire
record, the disputed evidence that a reasonable fact‑finder could not
have credited in favor of the finding is so significant that a fact‑finder
could not reasonably have formed a firm belief or conviction in the truth of
its finding, then the evidence is factually insufficient.  H.R.M., 209 S.W.3d at 108.  If we reverse on factual sufficiency grounds,
then we must detail in our opinion why we have concluded that a reasonable fact‑finder
could not have credited disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d 256, 266B67 (Tex. 2002).








Applicable Law

A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758B59, 102 S.
Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent‑child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  C.H., 89 S.W.3d at
26.  In a termination case, the State
seeks not just to limit parental rights but to end them permanentlyCto divest the parent and child of all legal rights, privileges,
duties, and powers normally existing between them, except for the child=s right to inherit.  Tex. Fam.
Code Ann. ' 161.206(b)
(Vernon Supp. 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes
in favor of the parent.  Holick,
685 S.W.2d at 20B21; In re
E.M.N., 221 S.W.3d 815, 820 (Tex. App.CFort Worth 2007, no pet.).








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must prove that termination is in the best interest of the
child.[4]  Tex. Fam. Code Ann. ' 161.001 (Vernon Supp. 2008); In re J.L., 163 S.W.3d 79, 84
(Tex. 2005).  Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  Tex. Fam. Code Ann. '' 161.001, 161.206(a); J.F.C., 96 S.W.3d at 263.  This intermediate standard falls between the
preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings.  In
re G.M., 596 S.W.2d 846, 847 (Tex. 1980); In re C.S., 208 S.W.3d 77,
83 (Tex. App.CFort Worth
2006, pet. denied).  It is defined as the
Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex. Fam. Code Ann. ' 101.007.








Prompt and permanent
placement of the child in a safe environment is presumed to be in the child=s best interest.  Tex. Fam. Code
Ann. ' 263.307(a).  There is also a
strong presumption that keeping a child with a parent is in the child=s best interest.  In re R.R.,
209 S.W.3d 112, 116 (Tex. 2006). 
Nonexclusive factors that the trier of fact in a termination case may
use in determining the best interest of the child include:

(1)     the desires of the child;

 

(2)     the emotional and physical needs of the child now and in the
future;

 

(3)     the emotional and physical danger to the child now and in the
future;

 

(4)     the parental abilities of the individuals
seeking custody; 

 

(5)     the programs available to assist these individuals to promote
the best interest of the child;

 

(6)     the plans for the child by these individuals or by the agency
seeking custody;

 

(7)     the stability of the home or proposed
placement;

 

(8)     the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)     any excuse for the acts or omissions of the parent.

 

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).








Undisputed evidence of just
one factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.  C.H., 89 S.W.3d at 27.  On the other hand, the presence of scant
evidence relevant to each factor will not support such a finding.  Id. 
These factors are not exhaustive; some listed factors may be
inapplicable to some cases; other factors not on the list may also be
considered when appropriate.  Id.  For this reason, we will only discuss the
factors which were made relevant by the evidence submitted at trial and will
combine our analysis of factors where the evidence may concurrently apply.

Analysis

The desires of the twins and
the parental abilities of appellant

While the twins were less than
a year old at the time of the termination trial and could not therefore
specifically express their desires, testimony at trial indicated that the twins
were emotionally attached to their foster parents and had not bonded
emotionally with appellant.  However,
permanent placement with the twins= foster parents was not an option, and a Department caseworker
testified that the twins would need to develop a bond with any permanent
placement, whether appellant or adopting parents.  To that end, the evidence showed that
appellant was loving, patient, and appropriate with the twins in her limited
visits with them after removal.  However,
appellant chose to visit Georgia while her termination case was pending rather
than complete her service plan, which may indicate that she was not motivated
in developing her parental abilities.








The present and future
physical and emotional needs of the twins

The evidence submitted at
trial indicated that appellant was unprepared to care for the twins= physical needs.  For instance,
though testimony demonstrated that the twins would continue to have minor
medical issues, including the possible need for outpatient surgery, appellant
had not applied for insurance for the twins at the time of trial.  The evidence also showed that appellant may
not have been aware of the twins= medical needs.  For instance,
though the twins had heart murmurs which required them to be closely monitored
at the hospital for more than a month following their birth, when asked about
whether the twins had medical problems at birth, appellant responded that they
were Ajust premature.@

The evidence also established
that appellant did not have a job (though she was looking for work, she had not
maintained employment since 1998), was receiving only $308 per month in social
security insurance, had little formal education (she dropped out of school in
the ninth grade), had no place set up for the children to reside (though she
was on the waiting list for Section 8 housing), had no means of transporting
the twins (other than possible public transportation), and had no cribs or
other supplies needed by infants. 
Finally, though appellant had given birth to five previous children, she
did not raise any of these children.








The present and future potential emotional and physical danger to the
twins, the acts or omissions of the appellant which may indicate that the
existing parent‑child relationship is not a proper one, and any excuse
for appellant=s
acts or omissions

 

Extensive testimony at trial
indicated that appellant had a long-standing, persistent drug problem.  For instance, appellant had been smoking
marijuana for eight years, used marijuana while pregnant with the twins, used
cocaine while pregnant with a previous child, and had never attempted to enter
a drug rehabilitation program.  Further,
though appellant recognized that the twins should not be around drugs and
offered to seek counseling for her drug issues, she admitted to smoking
marijuana on each of the two days preceding the termination trial and indicated
that marijuana was her Adrug of
choice.@

The plans for the twins by the Department and the stability of their
proposed placement

 

As noted, at the time of
trial, four families had already expressed interest in adopting the twins
together.  The Department was ready to
proceed with studying those options and was confident that a loving home could
be found for the twins.  Prompt and
permanent placement for the twins therefore seemed to be a very attainable
goal.  In contrast, appellant indicated
at trial that she was requesting that the court give her more time to complete
her service plan and that the issue of permanent placement could be decided at
a later date.








We hold that these facts,
applied cumulatively to the Holley factors, enabled the trial court to
reasonably form a firm conviction or belief that termination of appellants=s parental rights was in the twins= best interests.  C.H.,
89 S.W.3d at 28.  We therefore overrule
appellant=s second
issue.

                                                Conclusion

Having overruled both of
appellant=s issues, we
affirm the trial court=s order
terminating appellant=s parental
rights to S.W. and S.W.

 

 

TERRIE LIVINGSTON     

JUSTICE

 

PANEL: CAYCE, C.J.; LIVINGSTON, AND MCCOY, JJ.

CAYCE, C.J. dissents without opinion.

DELIVERED: October 9, 2008  











[1]See Tex.
R. App. P. 47.4.





[2]The
names of the parent and children subject to this appeal have been replaced with
initials in accordance with Texas Rule of Appellate Procedure 9.8.  Tex. R. App. P. 9.8.





[3]We
are reviewing here evidence relative to the termination only for purposes of
evaluating the trial court=s discretion in granting or
denying the continuance.





[4]A
petitioner must also prove that the parent has violated one of the several
statutory provisions contained in the family code.  Tex. Fam. Code Ann. ' 161.001(1).  However, appellant has agreed that a
violation of at least one of these provisions was established at trial, and we
will therefore limit our analysis to whether termination was in the twins= best
interests.  See id. ' 161.001(2).