In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00170-CV
_____

IN THE INTEREST OF C.H. AND A.H.

On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 17-09-11182-CV

MEMORANDUM OPINION

K.K. appeals the trial court's order terminating her parental rights. In seven issues, K.K. challenges the legal and factual sufficiency of the evidence supporting the best interest finding, as well as the termination grounds specified in section 161.001(b)(1)(D), (E), (O), and (P), and complains that the trial court abused its discretion by not allowing three witnesses to testify on K.K.'s behalf and not granting additional time to place the children with family. *See* Tex. Fam. Code Ann.

1

§ 161.001(b)(1)(D), (E), (O), (P), (b)(2). We affirm the trial court's order terminating K.K.'s parental rights.

## BACKGROUND

On March 4, 2019, the trial court called the case for trial. K.K.'s counsel stated that she was not ready to proceed with trial and asked for a reset, but counsel stated that she was ready to proceed as to status documents. The Department called K.K. to the stand, and she testified that she is the children's mother and provided the children's dates of birth. The trial judge then stated, "As much as I hate to do it, everybody announced ready and we started evidence in the matter, but I really think we['d] better recess. . . ." The trial court noted that K.K.'s counsel was not feeling well and reset the case.

When the proceeding resumed on May 15, 2019, the trial court conducted a hearing on K.K.'s motion for continuance, in which K.K. asserted that a home study of the children's maternal grandmother had been approved. K.K.'s counsel stated that she had not seen a copy of the study, but requested time to obtain a copy and then suggested that the case could "perhaps . . . proceed to mediation[.]" The attorney for the children's father, J.H., (who is not a party to this appeal) joined in the motion and asserted that continuing the case would be in the children's best interest. The attorney for the Department argued that the case had been pending for twenty

2

months, and that the motion for continuance had no verification or affidavit regarding the source of the information about a home study of the maternal grandmother, from whom the information came, or precisely what information K.K.'s counsel had received. The Department's counsel also asserted that the Department was unaware of any approved home study for the maternal grandmother.

K.K.'s counsel called Department case worker Victoria Warmuth to testify at the hearing. Warmuth testified that she had been in contact with the children's maternal grandmother, who resides in Florida, as well as the case worker in Florida. Warmuth explained that she did not receive notice of a home study regarding the maternal grandmother being approved while she was the case worker. Warmuth testified that because the maternal grandmother's own children had been removed and she had been involved with "several people who have been physically violent with her," Warmuth had concerns about placing the children with her.

CPS conservatorship caseworker Brenda Lara testified that she is the current caseworker for the children. Lara testified that as of the day before trial, the Department had not received the results of the home study regarding the maternal grandmother.

The Department's supervisor Kimberly Rodgers-Porter[1] also testified at the hearing on the motion for continuance. Rodgers-Porter testified that the Department had not received notice that a home study had been approved. According to Rodgers-Porter, the study was "still pending." Rodgers-Porter testified that she believed moving forward with the trial was in the children's best interest. Rodgers-Porter testified that the allegation in K.K.'s motion for continuance regarding a relative home study was untrue.

After Rodgers-Porter testified, K.K.'s counsel asked to call the maternal grandmother and the Department's supervisor in Florida by phone as witnesses, which the trial court denied. K.K. then called CASA's guardian ad litem, Susan Munkres. Munkres testified that the Department was still awaiting a determination regarding the maternal grandmother. Munkres also testified that the maternal grandmother has "a history of at least 15 years of abusive relationships with men." The trial judge noted that the issue at trial would be whether parental rights should be terminated and denied the motion for continuance.

When trial on the merits began, the Department called CPS investigator Daniel Willbur to testify. Willbur explained that when the case was assigned to him, the Department was concerned that the children's father, J.H., had been using them

---

[1]Lara explained that Rodgers-Porter is her supervisor.

"to make pornography[,]" and the FBI was investigating. Willbur testified that he prepared the affidavit in support of removal. According to Willbur, K.K. was incarcerated on a drug-related charge at that time, and she refused to tell Willbur where the children were. Willbur explained that when he spoke with K.K., she stated that she did not believe J.H. would have committed the crimes of which he was accused.

K.K. testified that she stopped using drugs when she was pregnant with A.H., but she resumed using drugs in 2017 after J.H. was incarcerated. K.K. explained that in 2017, she had lost everything and was living in her truck with the children. According to K.K., the longest period of time she has held a job since the children's birth is six months. K.K. testified that in August 2017, she was arrested for manufacturing and possession of methamphetamines, and she pleaded guilty and received ten years of deferred adjudication community supervision. K.K. explained that she was told that A.H. tested positive for methamphetamine. K.K. testified that she was incarcerated when the Department became involved. K.K. also testified that she was charged with criminal trespass in December 2017. K.K. explained that she has been diagnosed with post-traumatic stress disorder, anxiety, and depression. According to K.K., the children were in J.H.'s care when the FBI investigation began. K.K. testified that if she had known about the pornography, she would not

5

have left the children in J.H.'s care. K.K. agreed that she did not have possession of the children for approximately six or seven months. K.K. explained that the services she did for the Department have helped her. According to K.K., being with her is in the children's best interest.

Munkres testified that she has visited the children at least monthly since the case began. According to Munkres, the children were initially tearful, frightened, and afraid of J.H., but they are now "healthy and thriving" and can express their feelings. Munkres explained that A.H. reported that J.H. had rubbed his sexual organ against C.H. Munkres also testified that A.H. reported that he had told K.K. what J.H. was doing, and K.K. told A.H. to tell his father no and said "he's not supposed to do that." Munkres testified that she believes K.K. "failed to protect the children and . . . was aware that something was happening to the children and she did not stop it." Munkres reported that C.H. had also made outcry statements regarding her parents to Warmuth and to the therapist. Munkres explained that she is concerned about K.K.'s ability to protect the children because she has been with abusive partners, continually used drugs, lacks employment, and does not have stable housing. Munkres testified that CASA recommends termination of the parental rights of K.K. and J.H. Munkres testified that she recommended termination of K.K.'s rights due to issues of safety and stability. Munkres explained that K.K. has

not demonstrated that she can make wise decisions regarding the people in the children's lives. According to Munkres, the children's current caregivers want to adopt them, and the children want to stay with them.

Warmuth testified that she was assigned to the case regarding the children in September 2017, when K.K. was incarcerated for manufacturing methamphetamine with intent to deliver. According to Warmuth, K.K. became incarcerated three more times during the pendency of the case. Warmuth testified that K.K. missed approximately twenty-five drug tests between 2018 and 2019. Warmuth explained that K.K.'s drugs of choice were methamphetamine and alcohol, and K.K. had not demonstrated that she has a stable residence or stable employment.

According to Warmuth, both children disclosed physical and sexual abuse, but the children are now excited about school and the future. Warmuth testified that A.H. outcried to her that J.H. had touched his bottom and had touched and undressed C.H. According to Warmuth, C.H. outcried that J.H. had undressed her, digitally penetrated her, and touched himself in front of her. Warmuth testified that C.H. reported the abuse to K.K., and K.K. told her that J.H. was not supposed to do that and instructed her to tell J.H. he cannot do that. Warmuth opined that K.K. is unable to keep the children safe and to meet their needs, and she testified that the children are doing "really well[]" in their current placement and are happy to be there.

7

According to Warmuth, permanently severing the connection between K.K. and the children is in the children's best interest. Warmuth explained that unrelated adoption is the Department's permanency goal for the children.

K.K.'s counsel sought to call three witnesses to testify on K.K.'s behalf: Lucia DePaoli, Ryland Fowler, and Michelle Hansford. The Department objected to each of the witnesses, asserting that they had not been timely disclosed before trial. K.K.'s counsel responded that she disclosed the witnesses on her second supplemental response to the Department's request for disclosure, which the record reflects was filed on May 14, 2019, and asserted that the witnesses were not a surprise to the Department. The trial judge stated, "Surprise is not an issue. They need to have a neat list of who you intend to present as witnesses." K.K.'s counsel stated that it would have been impossible to disclose the witnesses in 2017 when the Department made its request for disclosure, but conceded that she "could have maybe disclosed it a little bit sooner[.]" The trial court sustained the Department's objection, and K.K.'s counsel then made an offer of proof.

During the offer of proof, Fowler testified that she is K.K.'s primary counselor, and she explained that K.K. has actively participated in counseling. Fowler testified that Santa Maria Hostel has a place for K.K. if she were to obtain custody of the children, and K.K. would continue with counseling "and then

8

outpatient and transitional living." Fowler explained that if the trial judge ordered a monitored return, Santa Maria Hostel would work with CPS. Lucia DePaoli testified during the offer of proof that she is the executive program director and executive program director of admissions at the Jacquelyn facility at Santa Maria Hostel. DePaoli explained that if the trial judge returned the children to K.K., Santa Maria would have an apartment available for K.K., and she explained that the facility is a safe and secure environment for children. During the offer of proof, Michelle Hansford stated that she works with Santa Maria and is also a volunteer parent advocate with the Department. Hansford explained that she was asked to meet with K.K. two months ago because her job entails advocating on behalf of birth parents. According to Hansford, K.K. is focused on her recovery and learning about parenting skills and protective factors, and she opined that Santa Maria is a safe environment for K.K. and the children.

K.K. called licensed chemical dependency counseling intern Melissa Porter to testify. Porter testified that she is K.K.'s peer recovery support specialist at Santa Maria Hostel, and she provides services such as "meetings, bus cards, employment, . . . education, housing, support in court, probation, any appointments, [and] anything that will hinder [K.K.] from her recovery. . . . According to Porter, an apartment is available for K.K. and the children if the children were returned to K.K. Porter also

9

explained that the facility offers parenting, nutrition, GED, and other groups and classes that could be required by the Department or probation. Porter testified that Santa Maria provides job training programs and helps graduates of those programs to obtain employment.

K.K. testified that she did not know about J.H.'s offense and she was not living with the children when it occurred. K.K. testified that she first became aware of the pornographic activity when she was asked to meet with an FBI agent. K.K. testified that neither of the children had told her about the pornographic activity before she spoke with the FBI agent. According to K.K., she was reluctant to take the children for a forensic examination because she did not "want it sticking in [C.H.'s] head that that happened, not knowing the severity of the situation." K.K. testified that she has been working with the staff at Santa Maria, and she can provide the children with a safe and drug-free environment. K.K. explained that she has been drug free for seven months; she has a sponsor and regularly attends AA meetings; and she has actively participated in all her drug addiction therapy.

## ISSUES ONE, TWO, THREE, FOUR, AND FIVE

In issue one, K.K. contends that the evidence was legally and factually insufficient to demonstrate that termination of her parental rights is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). In issue two, K.K. contends

10

that the evidence was legally and factually insufficient to support termination of her parental rights under section 161.001(b)(1)(D) of the Family Code, and in issue three, K.K. argues that the evidence was legally and factually insufficient to support termination under section 161.001(b)(1)(E). *See id.* § 161.001(b)(1)(D), (E). In issue four, K.K. challenges the legal and factual sufficiency of the evidence supporting termination of her parental rights under section 161.001(b)(1)(O), and in issue five, she challenges the legal and factual sufficiency of the evidence under section 161.001(b)(1)(P). *See id.* § 161.001(b)(1)(O), (P). We address issues one, two, three, four, and five together.

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the

11

truth of the Department's allegations. *Id*. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor if its ruling. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best interest finding is also supported by legally and factually sufficient evidence. *In the Interest of C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.). However, when, as here, a parent challenges a trial court's

findings under section 161.001(b)(1)(D) or (E), we must review the sufficiency of those grounds as a matter of due process and due course of law. *In the Interest of N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam).

Section 161.001(b)(1)(D) of the Family Code allows for termination of a parent's rights if the trier of fact finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). A parent's conduct in the home can create an environment that endangers the child's physical and emotional well-being. *In the Interest of J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent." *In the Interest of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

Regarding the children's best interest, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the children's best interest. *See In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *See In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The trial judge heard evidence that K.K. had left the children in the care of J.H., who was using the children to make pornographic videos. The trial judge also heard evidence that both A.H. and C.H. had made outcries regarding sexual abuse,

14

including an outcry to K.K., and K.K. responded by instructing the children to tell J.H. he was not allowed to do that. Additionally, the trial judge also heard evidence that K.K. had a history of abusing methamphetamines and alcohol, had been incarcerated for manufacturing and possessing methamphetamines, and lacked stable housing and employment. The trial judge further heard that K.K. had been charged with criminal trespass. In addition, the trial judge heard evidence that A.H. tested positive for methamphetamine. The trial court also heard evidence that K.K. had lived in her vehicle with the children and had been with abusive partners. Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that K.K. (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In the Interest of J.F.C.*, 96 S.W.3d at 266; *In the Interest of J.T.G.*, 121 S.W.3d at 125.

With respect to the children's best interest, the trial court heard evidence that (1) K.K. is unable to provide the children with safety and stability, (2) that the children are doing well in their current placement, and (3) termination of K.K.'s

15

parental rights is in the children's best interest. The trial court also heard evidence that K.K. has a history of drug and alcohol abuse, and she does not have stable housing or employment. Prompt and permanent placement of the children in a safe environment is presumed to be in their best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of K.K.'s parental rights was in the best interest of C.H. and A.H. *See id.* §§ 161.001(b)(2), 263.307(a), (b); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72.

We conclude that the Department established, by clear and convincing evidence, that K.K. committed the predicate acts enumerated in sections 161.001(b)(1)(D) and (E) and that termination of K.K.'s parental rights is in the best interest of C.H. and A.H. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (2); *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule issues one, two, and three. Having concluded that the evidence was legally and factually sufficient to support the trial court's findings as to subsections 161.001(b)(1)(D), (E), and (2), we need not reach issues four and five, in which K.K. challenges the sufficiency of the evidence supporting the trial court's findings under sections

16

161.001(b)(1)(O) and (P). *See In the Interest of N.G.*, 577 S.W.3d at 235; *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at \*1; *see also* Tex. R. App. P. 47.1.

ISSUE SIX

In issue six, K.K. asserts that the trial court abused its discretion when it refused to allow Fowler, DePaoli, and Hansford to testify on her behalf. We review the trial court's decision to admit or exclude evidence for abuse of discretion. *In the Interest of J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

A party who fails to timely make, amend, or supplement a discovery response may not offer the testimony of a non-party witness who was not timely identified unless the court finds that (1) there was good cause for the failure to timely disclose or (2) the failure will not unfairly surprise or prejudice the other parties. *In the Interest of A.C.*, No. 02-18-00129-CV, 2018 WL 5273931, at \*9 (Tex. App.—Fort Worth Oct. 24, 2018, pet. denied) (mem. op.) (citing Tex. R. Civ. P. 193.6(a)). As discussed above, the record reflects that K.K.'s counsel did not timely disclose the identities of the three witnesses before trial, and counsel admitted that she could have disclosed the witnesses sooner. Therefore, we conclude that the trial court did not err by excluding the testimony. *See* Tex. R. Civ. P. 193.6(a); *In the Interest of A.C.*,

17

2018 WL 5273931, at *9. Furthermore, we have already concluded that the evidence was legally and factually sufficient to support the trial court's best interest finding and the predicate acts in section 161.001(b)(1)(D) and (E). K.K.'s offer of proof demonstrated that the three excluded witnesses would have offered testimony regarding sections 161.001(b)(1)(O) and (P). Therefore, even if the trial court had erred, K.K. did not demonstrate that the trial court's exclusion of the testimony resulted in the rendition of an improper judgment or prevented her from properly presenting her case to this Court. *See* Tex. R. App. P. 44.1(a)(1). Accordingly, we overrule issue six. We affirm the trial court's order terminating K.K.'s parental rights.

## ISSUE SEVEN

In issue seven, K.K. argues that the trial court abused its discretion by not allowing additional time to place the children with family because a home study had become available. We review a trial court's decision regarding a continuance for abuse of discretion; that is, whether the trial court's decision was arbitrary, unreasonable, and made without reference to any guiding rules and principles *See In the Interest of E.L.T.*, 93 S.W.3d 372, 374-75 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R.

Civ. P. 251. If a motion for continuance is not verified, we must presume that the trial court did not abuse its discretion by denying the motion. *In the Interest of E.L.T.*, 93 S.W.3d at 375.

The record reflects that K.K.'s written motion for continuance, in which she requested additional time to acquire a copy of the allegedly newly discovered home study, was not verified or supported by affidavit. Therefore, we presume that the trial court did not abuse its discretion by denying the motion. *See id.* In addition, none of the witnesses testified that a home study of the maternal grandmother had been approved; rather, all of the witnesses testified that, to the Department's knowledge, no home study had been approved. For all these reasons, we cannot conclude that the trial court abused its discretion by denying K.K.'s motion for continuance. We therefore overrule issue seven. We affirm the trial court's order terminating K.K.'s parental rights.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 19, 2019
Opinion Delivered October 17, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.

19