

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00232-CV

IN THE INTEREST OF P.-L.M.M., A
CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant E.F. (Mother) appeals the judgment terminating her parental rights to her daughter P.-L.M.M.[2]  After a bench trial, the trial court found that Mother had knowingly placed or knowingly allowed P.-L.M.M. to remain in

---

[1]*See* Tex. R. App. P. 47.4.

[2]The trial court also terminated the parental rights of P-L.M.M.'s father, J.M. (Father), but Father has not appealed the judgment.

conditions or surroundings that endangered her physical or emotional well-being and had engaged in conduct or knowingly placed P.-L.M.M. with persons who engaged in conduct that endangered her physical or emotional well-being.[3]  The trial court also found that Mother constructively abandoned P.-L.M.M.[4] and that Mother had been the cause of P.-L.M.M. being born addicted to alcohol or a controlled substance.[5]  Finally, the trial court found that termination of Mother's parental rights would be in P.-L.M.M.'s best interest.  Mother argues in five issues that the trial court abused its discretion by denying Mother's oral motion for continuance and that insufficient evidence supports the trial court's statutory endangerment findings.[6]  We affirm.

## II. Background

P.-L.M.M. was born April 6, 2011, and the Department of Family and Protective Services (the Department) received a referral the next day that Mother had admitted to using methamphetamine throughout her pregnancy.  The Department removed P.-L.M.M. on April 8, 2011.  Department investigator Marilin Jakubowske interviewed Mother at the hospital after P.-L.M.M.'s birth, and Mother admitted to Jakubowske that she began using methamphetamine in 2003

---

[3]See Tex. Fam. Code Ann. § 161.001(1)(D), (E) (West Supp. 2012).

[4]See id. § 161.001(1)(N).

[5]See id. § 161.001(1)(R).

[6]Mother does not challenge the trial court's best interest finding.

2

when she was sixteen and had used methamphetamine almost daily until December 2010. Mother also told Jakubowske that her parental rights to her two older children had been previously terminated because of her drug use.[7] In addition, Mother served jail sentences in 2005 and 2010 for possession of methamphetamine, and the Department presented evidence that Mother had additional arrests for possession of hydrocodone, possession of a prohibited weapon, and unauthorized use of a motor vehicle.

Mother told Jakubowske that she had entered residential drug treatment at Nexxus in December 2010. Mother successfully completed the program and was discharged on January 17, 2011. However, Mother admitted to Jakubowske that she had relapsed and had used methamphetamine again in March 2011, one month before P.-L.M.M.'s birth. Jakubowske's testimony about Mother's admission was corroborated by Mother's written statement on an Acknowledgment of Substance Use Form.[8]

Department investigator Adela Rangel testified that Mother gave birth to another child, M.M., on March 30, 2012. Rangel testified that the Department had received another referral that Mother may have used drugs while pregnant with that child.

---

[7]One child was drug-exposed at birth.

[8]On April 8, 2011, Mother completed the form and indicated that she had used methamphetamine from December 2010 until March 2011 while she was pregnant with P.-L.M.M.

Father testified that he was arrested in March 2010 for selling methamphetamine and that he had sold methamphetamine for six years. Father also testified that he and Mother were married on April 15, 2011.

Mother's father, A.F., testified that Mother had a drug problem in the past. A.F. testified that he and Mother were "under hard terms" and were "bumping a little heads" because Mother's two older children were in foster care.[9] A.F. also testified that while he had never seen Mother using drugs, he had "seen certain things, aspects about [Mother] that look[ed] a little odd, so it gave [him] suspicion to believe that maybe [she was] on something." Mother's stepmother, T.F., testified that she practically disowned Mother when Mother used drugs while pregnant with P.-L.M.M. T.F. testified that she was concerned that Mother was a drug user in the past but believed that Mother wanted to change and that she had been working hard to change. However, Father testified that he was concerned that Mother had given birth to at least three children after having used methamphetamine while pregnant.

Department conservatorship worker Rita Thompson developed a service plan for Mother that required Mother to attend two job fairs; participate in Ladder Alliance, Workforce Solutions, and Goodwill Industries for job skills training; and maintain steady legal employment. The service plan also required that Mother participate in individual counseling, attend a parenting class, maintain weekly

---

[9]A.F. used the phrase "foster care," but Mother's parental rights to her older children were terminated. Those children have also been formally adopted.

contact with Thompson, attend scheduled visitation with P.-L.M.M., maintain housing, and refrain from criminal activity.

Thompson testified that Mother did not attend either job fair and that Mother gave no explanation for her nonattendance. Mother made two appointments for individual counseling but never attended. Mother also claimed to have completed the parenting class, but Thompson received no documentation of completion. Thompson testified that Mother also did not complete job skills training, that Mother had not been employed during the pendency of the case, and that Mother had not maintained weekly contact with Thompson. Additionally, Thompson testified that there was a two-month period in which Thompson had no contact with Mother and in which Mother did not attend any scheduled visits with P.-L.M.M. Thompson testified that Mother claimed she did not have transportation to attend visits during that time. Thompson also testified, however, that she had made bus passes available to Mother but that Mother had never asked for a bus pass and had never called to complain about lack of transportation. Thompson also testified that she did not know where Mother was currently living.

Thompson testified that Mother completed a drug and alcohol assessment in June 2011. The assessment included a recommendation that Mother participate in outpatient drug treatment, but Mother had not participated. Thompson also testified that Mother had failed to comply with two random urinalysis drug tests on August 23, 2011, and October 20, 2011.

5

The Department asked that the court terminate Mother's and Father's parental rights and find that termination is in P.-L.M.M.'s best interest. P.-L.M.M. lives in a foster-to-adopt home with parents who have already adopted P.-L.M.M.'s half-siblings. Thompson testified that she saw no impediments to P.-L.M.M.'s foster parents adopting P.-L.M.M. Thompson testified that, physically, P.-L.M.M. is doing well; she is toddling and taking a few steps with assistance. She is also learning how to play appropriately and has a "cute personality."

The termination trial was held on April 4 and 9, 2012, and Mother did not appear in court either day. Father testified that Mother was not in court because she was fighting to keep her youngest child, one-week-old M.M., and that Mother was letting Father try to gain custody of P.-L.M.M. because that is what Mother believed was best for P.-L.M.M. Father testified that Mother was not coming to court so that the Department could not easily take custody of M.M. Father also testified that he did not know where Mother was and that he and Mother had agreed that if Father did not know where Mother and M.M. were, Father would not have to lie about it in court. Father testified that he knew the Department was looking for M.M. and that he thought Mother was doing the right thing by not attending the trial.

### III. Denial of Motion for Continuance

In her first issue, Mother contends that the trial court erred by denying her oral motion for continuance. We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). We do not substitute our judgment for that of the trial court. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). Instead, we must determine whether the trial court's action was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The test is whether the trial court acted without reference to guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). Generally, when the movant fails to provide an affidavit in support of the motion, the appellate court presumes that the trial court did not abuse its discretion in denying the motion for continuance. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 226 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 130 S. Ct. 2061 (2010).

A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, through consent of the parties, or by operation of law. Tex. R. Civ. P. 251; *see In re E.L.T.*, 93 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Here, Mother's counsel made an oral motion for

continuance just before the termination trial began on April 4, 2012.[10] However, the record does not contain a written motion for continuance or an affidavit. If a motion for continuance is not made in writing and verified, it will be presumed that the trial court did not abuse its discretion by denying the motion. *See Villegas*, 711 S.W.2d at 626; *E.L.T.*, 93 S.W.3d at 375. Because Mother did not comply with rule 251, the trial court did not abuse its discretion by denying her motion for continuance. *See Villegas*, 711 S.W.2d at 626; *see also In re T.H.*, No. 02-07-00464-CV, 2008 WL 4831374, at *8 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.); *In re T.D.N.*, No. 14-07-00387-CV, 2008 WL 2574055, at *1 (Tex. App.—Houston [14th Dist.] June 26, 2008, no pet.) (mem. op.) (holding trial court did not abuse its discretion by failing to grant oral motion for continuance because appellant did not comply with rule of civil procedure 251). Moreover, the trial court could have reasonably agreed with the Department's arguments in opposition to the oral motion for continuance that Mother had adequate and proper notice of the trial date and that counsel's unawareness of Mother's whereabouts was not grounds for a continuance. Accordingly, we overrule Mother's first issue.

---

[10]Mother's counsel requested a continuance because Mother was not in court.

8

## IV. Sufficiency of the Evidence

### A. Standards of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re R.R.*, 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163

S.W.3d 79, 84 (Tex. 2005).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.T.*, 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that at least one of the alleged grounds for termination was proven.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in the light most favorable to the finding and judgment.  *Id.*  We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so.  *Id.*  We disregard all evidence that a reasonable factfinder could have disbelieved.  *Id.*  We consider undisputed evidence even if it is contrary to the finding.  *Id.*  That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not.  *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province.  *Id.* at 573, 574.  And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable.  *Id.* at 573.

10

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001; *see also id.* § 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated subsection (D), (E), (N), or (R) of section 161.001(1). Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Endangerment

Mother argues in her second and third issues that the evidence is legally and factually insufficient to support termination under family code section

161.001(1)(D) and (E). Because the evidence related to each issue is interwoven, we address Mother's second and third issues together.

### 1. Applicable Law

"Endanger" means to expose to loss or injury, to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under section 161.001(1)(D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of the endangerment to the child's physical or emotional well-being. *J.T.G.*, 121 S.W.3d at 125. Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ). For example, parental and caregiver illegal drug use and drug-related criminal activity support the conclusion that the child's surroundings endanger the child's physical or emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

Under section 161.001(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See J.T.G.*, 121 S.W.3d at 125; *see also* Tex. Fam. Code Ann. § 161.001(1)(E). Additionally, termination under (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125; *see* Tex. Fam. Code Ann. §

12

161.001(1)(E). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). A mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child. *J.T.G.*, 121 S.W.3d at 125. Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct as well. *Id.* at 125–26.

"To determine whether termination is necessary, courts may look to parental conduct occurring both before and after the child's birth." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

### 2. Analysis

Mother argues that there is insufficient evidence that she endangered her child because she did not appear at trial. She also argues that P.-L.M.M. did not test positive for drugs at birth and that Mother's relapse occurred "well before the child's birth." Finally, Mother argues that her admission of methamphetamine use during her pregnancy does not establish a voluntary, deliberate, and conscious course of conduct.

13

The trial court, however, heard direct evidence of Mother's extensive history of methamphetamine use. Mother admitted that she had used methamphetamine since age sixteen and that she had used methamphetamine almost daily for seven years. While Mother successfully completed a drug treatment program, she relapsed and admitted to using methamphetamine within a month of P.-L.M.M.'s birth. Mother also served two jail sentences for possession of methamphetamine and had her parental rights to her two older children terminated because of her drug use. Moreover, Mother failed to comply with requests to take two random drug tests in 2011 after removal of P.-L.M.M. *See J.T.G.*, 121 S.W.3d at 126–27 (holding mother's drug use during pregnancy, continued drug use after her children were removed, and failure to take requested drug tests is evidence that supports section 161.001(1)(D) and (E) findings); *see also In re J.M.,* No. 02-08-00259-CV, 2009 WL 112679, at *4–5 (Tex. App.—Fort Worth Jan. 15, 2009, no pet.) (mem. op.) (holding that mother's drug use during pregnancy and drug use six to eight months before the termination trial constituted legally and factually sufficient evidence of endangerment under section 161.001(1)(E)). In addition, Mother married Father shortly after P.-L.M.M. was born. He testified that he was arrested in 2010 for possession of methamphetamine and that he had been selling methamphetamine for six years. *See In re K.B.,* No. 02-09-00441-CV, 2010 WL 4028107, at *11 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.) (finding mother's long history of illegal drug use and moving into a home with a

14

drug dealer supported a termination finding under section 161.001(1)(D) and (E)).

Applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's findings that Mother engaged in conduct that endangered P.-L.M.M.'s physical or emotional well-being and that Mother knowingly placed or knowingly allowed P.-L.M.M. to remain in conditions or surroundings that endangered P.-L.M.M.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E); *see also H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. We thus overrule Mother's second and third issues.[11]

## V. Conclusion

Having overruled each of Mother's dispositive issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: November 1, 2012

---

[11]Along with a best interest finding, a finding of only one ground alleged under 161.001(1) is sufficient to support a judgment of termination. *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.). We thus need not address Mother's fourth and fifth issues. *See id.*; *see also* Tex. R. App. P. 47.1.

15