02-12-232-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00232-CV

 

 


 
 
 In
 the Interest of P.-L.M.M., A Child
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 323rd District
 Court
  
 of
 Tarrant County (323-94346J-11)
  
 November
 1, 2012
  
 Opinion
 by Justice Gardner
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

By_________________________________

   
Justice Anne Gardner

 

 



 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00232-CV

 

 


 
 
 In the Interest of P.-L.M.M., A Child
 
 
  
 
 
  
 
 
 
 
  
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellant
E.F. (Mother) appeals the judgment terminating her parental rights to her
daughter P.-L.M.M.[2]  After a bench trial, the
trial court found that Mother had knowingly placed or knowingly allowed P.-L.M.M.
to remain in conditions or surroundings that endangered her physical or
emotional well-being and had engaged in conduct or knowingly placed P.-L.M.M.
with persons who engaged in conduct that endangered her physical or emotional
well-being.[3]  The trial court also
found that Mother constructively abandoned P.-L.M.M.[4]
and that Mother had been the cause of P.-L.M.M. being born addicted to alcohol
or a controlled substance.[5]  Finally, the trial court
found that termination of Mother’s parental rights would be in P.-L.M.M.’s best
interest.  Mother argues in five issues that the trial court abused its
discretion by denying Mother’s oral motion for continuance and that
insufficient evidence supports the trial court’s statutory endangerment
findings.[6]  We affirm.

II.  Background

P.-L.M.M.
was born April 6, 2011, and the Department of Family and Protective Services
(the Department) received a referral the next day that Mother had admitted to
using methamphetamine throughout her pregnancy.  The Department removed P.-L.M.M.
on April 8, 2011.  Department investigator Marilin Jakubowske interviewed
Mother at the hospital after P.-L.M.M.’s birth, and Mother admitted to
Jakubowske that she began using methamphetamine in 2003 when she was sixteen
and had used methamphetamine almost daily until December 2010.  Mother also told
Jakubowske that her parental rights to her two older children had been
previously terminated because of her drug use.[7]  In addition, Mother
served jail sentences in 2005 and 2010 for possession of methamphetamine, and the
Department presented evidence that Mother had additional arrests for possession
of hydrocodone, possession of a prohibited weapon, and unauthorized use of a
motor vehicle.

Mother
told Jakubowske that she had entered residential drug treatment at Nexxus in
December 2010.  Mother successfully completed the program and was discharged on
January 17, 2011.  However, Mother admitted to Jakubowske that she had relapsed
and had used methamphetamine again in March 2011, one month before P.-L.M.M.’s
birth.  Jakubowske’s testimony about Mother’s admission was corroborated by
Mother’s written statement on an Acknowledgment of Substance Use Form.[8]

Department
investigator Adela Rangel testified that Mother gave birth to another child,
M.M., on March 30, 2012.  Rangel testified that the Department had received
another referral that Mother may have used drugs while pregnant with that
child.

Father
testified that he was arrested in March 2010 for selling methamphetamine and
that he had sold methamphetamine for six years.  Father also testified that he
and Mother were married on April 15, 2011.

Mother’s
father, A.F., testified that Mother had a drug problem in the past.  A.F.
testified that he and Mother were “under hard terms” and were “bumping a little
heads” because Mother’s two older children were in foster care.[9] 
A.F. also testified that while he had never seen Mother using drugs, he had
“seen certain things, aspects about [Mother] that look[ed] a little odd, so it
gave [him] suspicion to believe that maybe [she was] on something.”  Mother’s
stepmother, T.F., testified that she practically disowned Mother when Mother
used drugs while pregnant with P.-L.M.M.  T.F. testified that she was concerned
that Mother was a drug user in the past but believed that Mother wanted to
change and that she had been working hard to change.  However, Father testified
that he was concerned that Mother had given birth to at least three children
after having used methamphetamine while pregnant.

Department
conservatorship worker Rita Thompson developed a service plan for Mother that
required Mother to attend two job fairs; participate in Ladder Alliance,
Workforce Solutions, and Goodwill Industries for job skills training; and
maintain steady legal employment.  The service plan also required that Mother
participate in individual counseling, attend a parenting class, maintain weekly
contact with Thompson, attend scheduled visitation with P.-L.M.M., maintain
housing, and refrain from criminal activity.

Thompson
testified that Mother did not attend either job fair and that Mother gave no
explanation for her nonattendance.  Mother made two appointments for individual
counseling but never attended.  Mother also claimed to have completed the
parenting class, but Thompson received no documentation of completion.  Thompson
testified that Mother also did not complete job skills training, that Mother
had not been employed during the pendency of the case, and that Mother had not
maintained weekly contact with Thompson.  Additionally, Thompson testified that
there was a two-month period in which Thompson had no contact with Mother and
in which Mother did not attend any scheduled visits with P.-L.M.M.  Thompson
testified that Mother claimed she did not have transportation to attend visits
during that time.  Thompson also testified, however, that she had made bus
passes available to Mother but that Mother had never asked for a bus pass and
had never called to complain about lack of transportation.  Thompson also
testified that she did not know where Mother was currently living.

Thompson
testified that Mother completed a drug and alcohol assessment in June 2011. 
The assessment included a recommendation that Mother participate in outpatient
drug treatment, but Mother had not participated.  Thompson also testified that
Mother had failed to comply with two random urinalysis drug tests on August 23,
2011, and October 20, 2011.

The
Department asked that the court terminate Mother’s and Father’s parental rights
and find that termination is in P.-L.M.M.’s best interest.  P.-L.M.M. lives in
a foster-to-adopt home with parents who have already adopted P.-L.M.M.’s
half-siblings.  Thompson testified that she saw no impediments to P.-L.M.M.’s
foster parents adopting P.-L.M.M.  Thompson testified that, physically, P.-L.M.M.
is doing well; she is toddling and taking a few steps with assistance.  She is
also learning how to play appropriately and has a “cute personality.”

The
termination trial was held on April 4 and 9, 2012, and Mother did not appear in
court either day.  Father testified that Mother was not in court because she
was fighting to keep her youngest child, one-week-old M.M., and that Mother was
letting Father try to gain custody of P.-L.M.M. because that is what Mother
believed was best for P.-L.M.M.  Father testified that Mother was not coming to
court so that the Department could not easily take custody of M.M.  Father also
testified that he did not know where Mother was and that he and Mother had
agreed that if Father did not know where Mother and M.M. were, Father would not
have to lie about it in court.  Father testified that he knew the Department
was looking for M.M. and that he thought Mother was doing the right thing by
not attending the trial.

III.
 Denial of Motion for Continuance

In
her first issue, Mother contends that the trial court erred by denying her oral
motion for continuance.  We review a trial court’s ruling on a motion for
continuance for an abuse of discretion.  See BMC Software Belg., N.V.
v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002).  We do not substitute our
judgment for that of the trial court.  In re Nitla S.A. de C.V., 92
S.W.3d 419, 422 (Tex. 2002) (orig. proceeding).  Instead, we must determine
whether the trial court’s action was so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law.  Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 161 (Tex. 2004).  The test is whether the trial
court acted without reference to guiding rules or principles.  Cire v.
Cummings, 134 S.W.3d 835, 838–39 (Tex. 2004).  Generally, when the
movant fails to provide an affidavit in support of the motion, the appellate
court presumes that the trial court did not abuse its discretion in denying the
motion for continuance.  Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.
1986); Frequent Flyer Depot, Inc. v. Am. Airlines, Inc., 281 S.W.3d 215,
226 (Tex. App.—Fort Worth 2009, pet. denied), cert. denied, 130 S. Ct.
2061 (2010).

A
motion for continuance shall not be granted except for sufficient cause
supported by an affidavit, through consent of the parties, or by operation of
law.  Tex. R. Civ. P. 251; see In re E.L.T., 93 S.W.3d 372, 375 (Tex.
App.—Houston [14th Dist.] 2002, no pet.).  Here, Mother’s counsel made an oral
motion for continuance just before the termination trial began on April 4,
2012.[10]  However, the record
does not contain a written motion for continuance or an affidavit.  If a motion
for continuance is not made in writing and verified, it will be presumed that
the trial court did not abuse its discretion by denying the motion.  See
Villegas, 711 S.W.2d at 626; E.L.T., 93 S.W.3d at 375.  Because
Mother did not comply with rule 251, the trial court did not abuse its
discretion by denying her motion for continuance.  See Villegas, 711
S.W.2d at 626; see also In re T.H., No. 02-07-00464-CV, 2008 WL 4831374,
at *8 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.); In re T.D.N.,
No. 14-07-00387-CV, 2008 WL 2574055, at *1 (Tex. App.—Houston [14th Dist.] June
26, 2008, no pet.) (mem. op.) (holding trial court did not abuse its discretion
by failing to grant oral motion for continuance because appellant did not
comply with rule of civil procedure 251).  Moreover, the trial court could have
reasonably agreed with the Department’s arguments in opposition to the oral
motion for continuance that Mother had adequate and proper notice of the trial
date and that counsel’s unawareness of Mother’s whereabouts was not grounds for
a continuance.  Accordingly, we overrule Mother’s first issue.

IV.  Sufficiency
of the Evidence

A.  Standards of Review

A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397
(1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  “While parental
rights are of constitutional magnitude, they are not absolute.  Just as it is
imperative for courts to recognize the constitutional underpinnings of the
parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanently—to divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child’s right to inherit.  Tex.
Fam. Code Ann. § 161.206(b) (West 2008); Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly
construe involuntary termination statutes in favor of the parent.  Holick,
685 S.W.2d at 20–21; In re R.R., 294 S.W.3d 213, 233 (Tex. App.—Fort
Worth 2009, no pet.).

In
proceedings to terminate the parent-child relationship brought under section 161.001
of the family code, the petitioner must establish one ground listed under
subsection (1) of the statute and must also prove that termination is in the
best interest of the child.  Tex. Fam. Code Ann. § 161.001; In re J.L.,
163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established; termination
may not be based solely on the best interest of the child as determined by the
trier of fact.  Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533
(Tex. 1987); In re D.T., 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000,
pet. denied) (op. on reh’g).

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that at least one of the alleged grounds for
termination was proven.  In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We review all the evidence in the light most favorable to the finding and
judgment.  Id.  We resolve any disputed facts in favor of the finding if
a reasonable factfinder could have done so.  Id.  We disregard all
evidence that a reasonable factfinder could have disbelieved.  Id.  We
consider undisputed evidence even if it is contrary to the finding.  Id. 
That is, we consider evidence favorable to termination if a reasonable
factfinder could, and we disregard contrary evidence unless a reasonable
factfinder could not.  Id.

We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.

Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001; see also id. § 161.206(a).  Evidence is
clear and convincing if it “will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.”  Id. § 101.007 (West 2008).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In re J.F.C., 96 S.W.3d 256, 263
(Tex. 2002); see In re J.A.J., 243 S.W.3d 611, 616 (Tex. 2007)
(contrasting standards for termination and modification).

In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our own.  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that the parent violated subsection (D), (E), (N), or (R) of section
161.001(1).  Tex. Fam. Code Ann. § 161.001; C.H., 89 S.W.3d at 28. 
If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction
in the truth of its finding, then the evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

B.  Endangerment 

Mother
argues in her second and third issues that the evidence is legally and
factually insufficient to support termination under family code section
161.001(1)(D) and (E).  Because the evidence related to each issue is
interwoven, we address Mother’s second and third issues together.

1.  Applicable
Law

“Endanger”
means to expose to loss or injury, to jeopardize.  Boyd, 727 S.W.2d at
533; In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no
pet.).  Under section 161.001(1)(D), it is necessary to examine evidence
related to the environment of the child to determine if the environment was the
source of the endangerment to the child’s physical or emotional well-being.  J.T.G.,
121 S.W.3d at 125.  Conduct of a parent in the home can create an environment
that endangers the physical and emotional well-being of a child.  In re W.S.,
899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ). For example, parental
and caregiver illegal drug use and drug-related criminal activity support the
conclusion that the child’s surroundings endanger the child’s physical or
emotional well-being.  See In re S.D., 980 S.W.2d 758, 763 (Tex. App.—San
Antonio 1998, pet. denied).

Under
section 161.001(1)(E), the relevant inquiry is whether evidence exists that the
endangerment of the child’s physical well-being was the direct result of the
parent’s conduct, including acts, omissions, or failures to act.  See J.T.G.,
121 S.W.3d at 125; see also Tex. Fam. Code Ann. § 161.001(1)(E). 
Additionally, termination under (E) must be based on more than a single act or
omission; the statute requires a voluntary, deliberate, and conscious course of
conduct by the parent.  J.T.G., 121 S.W.3d at 125; see Tex. Fam.
Code Ann. § 161.001(1)(E).  It is not necessary, however, that the parent’s
conduct be directed at the child or that the child actually suffer injury.  Boyd,
727 S.W.2d at 533; J.T.G., 121 S.W.3d at 125.  The specific danger to
the child’s well-being may be inferred from parental misconduct standing
alone.  Boyd, 727 S.W.2d at 533; In re R.W., 129 S.W.3d 732, 738
(Tex. App.—Fort Worth 2004, pet. denied).  A mother’s use of drugs during
pregnancy may amount to conduct that endangers the physical and emotional well-being
of the child.  J.T.G., 121 S.W.3d at 125.  Drug addiction and its effect
on a parent’s life and ability to parent may establish an endangering course of
conduct as well.  Id. at 125–26.  

“To
determine whether termination is necessary, courts may look to parental conduct
occurring both before and after the child’s birth.”  In re M.E.-M.N.,
342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).  The factfinder
may infer from past conduct endangering the child’s well-being that similar
conduct will recur if the child is returned to the parent.  In re M.R.J.M.,
280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh’g).

2.  Analysis

Mother
argues that there is insufficient evidence that she endangered her child because
she did not appear at trial.  She also argues that P.-L.M.M. did not test positive
for drugs at birth and that Mother’s relapse occurred “well before the child’s
birth.”  Finally, Mother argues that her admission of methamphetamine use
during her pregnancy does not establish a voluntary, deliberate, and conscious
course of conduct.

The
trial court, however, heard direct evidence of Mother’s extensive history of methamphetamine
use.  Mother admitted that she had used methamphetamine since age sixteen and
that she had used methamphetamine almost daily for seven years.  While Mother
successfully completed a drug treatment program, she relapsed and admitted to
using methamphetamine within a month of P.-L.M.M.’s birth.  Mother also served
two jail sentences for possession of methamphetamine and had her parental
rights to her two older children terminated because of her drug use.  Moreover,
Mother failed to comply with requests to take two random drug tests in 2011
after removal of P.-L.M.M.  See J.T.G., 121 S.W.3d at 126–27 (holding
mother’s drug use during pregnancy, continued drug use after her children were
removed, and failure to take requested drug tests is evidence that supports
section 161.001(1)(D) and (E) findings); see also In re J.M., No.
02-08-00259-CV, 2009 WL 112679, at *4–5 (Tex. App.—Fort Worth Jan. 15, 2009, no
pet.) (mem. op.) (holding that mother’s drug use during pregnancy and drug use
six to eight months before the termination trial constituted legally and
factually sufficient evidence of endangerment under section 161.001(1)(E)).  In
addition, Mother married Father shortly after P.-L.M.M. was born.  He testified
that he was arrested in 2010 for possession of methamphetamine and that he had
been selling methamphetamine for six years.  See In re K.B., No. 02-09-00441-CV,
2010 WL 4028107, at *11 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem.
op.) (finding mother’s long history of illegal drug use and moving into a home
with a drug dealer supported a termination finding under section 161.001(1)(D)
and (E)).

Applying
the appropriate standards of review, we hold that the evidence is legally and
factually sufficient to support the trial court’s findings that Mother engaged
in conduct that endangered P.-L.M.M.’s physical or emotional well-being and
that Mother knowingly placed or knowingly allowed P.-L.M.M. to remain in
conditions or surroundings that endangered P.-L.M.M.’s physical or emotional
well-being.  See Tex. Fam. Code Ann. § 161.001(1)(D), (E); see also
H.R.M., 209 S.W.3d at 108; J.P.B., 180 S.W.3d at 573.  We thus
overrule Mother’s second and third issues.[11]

V.  Conclusion


Having
overruled each of Mother’s dispositive issues, we affirm the trial court’s
judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MCCOY, JJ.



DELIVERED:  November 1, 2012









[1]See Tex. R. App. P. 47.4.





[2]The trial court also
terminated the parental rights of P-L.M.M.’s father, J.M. (Father), but Father has
not appealed the judgment.





[3]See Tex. Fam. Code
Ann. § 161.001(1)(D), (E) (West Supp. 2012).





[4]See id. §
161.001(1)(N).





[5]See id. §
161.001(1)(R).





[6]Mother does not challenge
the trial court’s best interest finding.





[7]One child was drug-exposed
at birth.





[8]On April 8, 2011, Mother
completed the form and indicated that she had used methamphetamine from
December 2010 until March 2011 while she was pregnant with P.-L.M.M.





[9]A.F. used the phrase “foster
care,” but Mother’s parental rights to her older children were terminated. 
Those children have also been formally adopted.





[10]Mother’s counsel
requested a continuance because Mother was not in court.





[11]Along with a best
interest finding, a finding of only one ground alleged under 161.001(1) is
sufficient to support a judgment of termination.  In re E.M.N., 221
S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.).  We thus need not address
Mother’s fourth and fifth issues.  See id.; see also Tex. R. App.
P. 47.1.